AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>JUAN RAMIREZ<br><br>*Defendant(s)* | )<br>)<br>) Case No. 8:16 MJ 1720 AEP<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  unknown date to November 2, 2016  in the county of  Manatee  in the  Middle  District of  Florida , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B). | Knowingly and willfully possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine. |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

*Complainant's signature*

Hayley Hovhanessian, Special Agent (DEA)
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/3/16

*Judge's signature*

City and state:  Tampa, Florida

ANTHONY E. PORCELLI, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT
# OF CRIMINAL COMPLAINT

I, Hayley Hovhanessian, after being duly sworn, depose and say as follows:

1. I am commissioned as a Special Agent with the Drug Enforcement Administration (DEA) and have been so appointed since July 2014. I am presently assigned to the DEA Tampa District Office in the Middle District of Florida. My duties as a DEA Special Agent involve the investigation of various criminal activities of narcotics traffickers and their associates.

2. This affidavit is being submitted in support of a Criminal Complaint charging Juan Manuel RAMIREZ with Possession with Intent to Distribute 500 grams or more of Cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1). This affidavit does not contain all of the information pertaining to this investigation, and merely provides probable cause for a court finding. I have personally participated in this investigation described below and am familiar with the information contained in this affidavit either through personal observations or those of other law enforcement officers and credible confidential sources.

## CONFIDENTIAL SOURCE QUALIFICATION

3. The confidential source discussed below in the Probable Cause section is protected due to the existence of an ongoing federal investigation which could be comprised or obstructed if the source was disclosed at this juncture. I know the source to be reliable based upon his/her extensive use in

this and other investigations where information derived from him/her have proven to be highly credible. There is independent investigative corroboration which validates the source's information. The confidential source is cooperating with law enforcement in an effort to receive a sentence reduction on current drug charges.

## PROBABLE CAUSE

4. In October 2016, agents from the DEA received information from a confidential source (CS) that a Hispanic male, later identified as Juan Manuel RAMRIEZ, was interested in supplying the CS with quantities of cocaine. Specifically, per the CS, RAMIREZ advised the CS that he and his associates could supply the CS with multiple kilograms of cocaine in the area of Manatee County, Florida. Furthermore, the CS advised that he/she was supposed to meet RAMIREZ in the near future to continue negotiations for obtaining the noted cocaine.

5. On October 25, 2016, the CS, at the direction of Law Enforcement, contacted RAMIREZ, at cellular telephone number (941) 201-8593, and agreed to meet later that afternoon/evening to view a sample of cocaine and to continue negotiations for obtaining kilogram quantities of cocaine from RAMIREZ and his associates. Cellular telephone number (914) 201-8593 does not have a listed subscriber, but is the number RAMIREZ provided to the CS for the purpose of contacting RAMIREZ.

6. On October 25, 2016, the noted CS met with Agents and Detectives at a neutral location in Bradenton, Florida. At that time, the CS along with the CS's vehicle were searched and no contraband was found. The CS was later contacted by RAMIREZ who instructed the CS to meet him at his business, identified as Super Auto car lot, located at 5805 14th Street West, Bradenton, Florida. Soon thereafter, surveillance was established in the area of the Super Auto car lot.

7. A short while later, surveillance units observed RAMIREZ arrive to the vicinity of the Super Auto car lot in a grey/white Chevrolet pick-up truck bearing Florida license plate CCX-X07. Agents previously identified that Chevrolet truck as being registered to Super Auto and Alejandra ACUNA who is believed to be the spouse of RAMIREZ. A few moments later, surveillance units observed the CS vehicle arrive and park at the Super Auto car lot. The CS exited the CS's vehicle and met with RAMIREZ. During the meeting, which was captured on a covert audio/video recording device, RAMIREZ informed the CS that RAMIREZ was running low on product but was in possession of a half-kilogram of cocaine. RAMIREZ offered the half-kilogram of cocaine to the CS, which the CS declined. RAMIREZ then informed the CS that he was leaving early Friday (to obtain additional cocaine) and would be back to the area of Bradenton, Florida, on or around Sunday evening.

8. On October 28, 2016, the aforementioned CS agreed to meet with RAMIREZ at his business to continue negotiations reference obtaining kilogram

quantities of cocaine and to possibly receive a sample of cocaine on consignment. Later that afternoon, the CS met with Agents and Detectives at a neutral location in Bradenton, Florida. At that time, the CS along with the CS's vehicle were searched by Law Enforcement, and no contraband was found. The CS was also equipped with a covert audio recording device to utilize during the pending meeting with RAMIREZ. After multiple phone conversations, RAMIREZ instructed the CS to meet RAMIREZ at the Super Auto car shop in approximately thirty minutes. The CS later departed the neutral location, followed by surveillance units, and traveled to Super Auto in Bradenton, Florida.

9. Surveillance units later observed the CS arrive and park at the Super Auto car lot in Bradenton, Florida. At that time, the CS exited the CS's vehicle and met with RAMIREZ on the outskirts of the lot. A short while later, the CS was observed reentering the CS's vehicle and departing the vicinity of the Super Auto car lot and was again continuously monitored by surveillance units until arriving back at the neutral location. Once at the neutral location, the CS produced a plastic bag that contained approximately four ounces of cocaine. Per the CS, RAMIREZ provided the cocaine to the CS on consignment and continued discussions about RAMIREZ's upcoming trip to obtain more cocaine. The CS and RAMIREZ agreed to meet in the near future to complete a transaction for approximately two kilograms of cocaine.

10. On November 2, 2016, the CS, at the direction of Law Enforcement, placed a controlled telephone call to RAMIREZ at cellular

telephone number (941) 201-8593, and arranged to meet RAMIREZ later that day to complete the noted cocaine transaction. RAMIREZ informed the CS that RAMIREZ was ready and would direct the CS to a meeting location as the CS arrived to the area of Bradenton, Florida. RAMIREZ later informed the CS to meet RAMIREZ at the Publix Supermarket located at 6030 14th Street West, Bradenton, Florida. That evening, surveillance was established in the vicinity of the Publix Supermarket located at 6030 14th Street West, Bradenton, Florida. Also at that time, the CS met with Agents and Detectives at a neutral location in Bradenton, Florida. The CS along with the CS's vehicle were searched and no contraband was found. Soon thereafter, RAMIREZ was observed by surveillance units at the Sonic Restaurant located at 6008 14th Street West, Bradenton, Florida, (which is near the noted Publix Supermarket) and was driving a silver Chevrolet Equinox bearing Florida license plate PH0-52D. Agents previously observed that Equinox at the Super Auto car lot and noted that the license plate was a dealer plate belonging to Super Auto.

11. The CS then departed the neutral location and arrived to the Publix Supermarket to await the arrival of RAMIREZ. Law enforcement maintained continuous surveillance of the CS. Soon thereafter, RAMIREZ was observed by Law Enforcement arriving and parking near the CS vehicle in the Publix parking lot. A few moments later, surveillance units observed the CS exit the CS's vehicle and subsequently enter the passenger's seat of RAMIREZ's vehicle. While within RAMIREZ's vehicle, the CS observed one kilogram of cocaine that

was contained within a Sonic Restaurant paper bag. After examining the cocaine, the CS exited the vehicle and a pre-determined arrest signal was given and arrest teams moved in and detained RAMIREZ. During a later search of RAMIREZ's vehicle following his arrest, Agents and Detectives discovered an approximate kilogram of cocaine that was wrapped in plastic and contained in the noted Sonic paper bag. A field test was later conducted on the package and it tested positive for containing a detectable amount of cocaine.

12. Based upon the information contained in this affidavit, I believe there is probable cause to believe that Juan Manuel RAMIREZ did knowingly and willfully possess with intent to distribute cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

FURTHER YOUR AFFIANT SAYETH NAUGHT.

Hayley Hovhanessian, Special Agent
U.S. Drug Enforcement Administration

Sworn to and subscribed before me
This 3rd day of November, 2016.

ANTHONY E. PORCELLI
United States Magistrate Judge